# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO,
## WESTERN DIVISION

| | |
|---|---|
| **Chicago Sweeteners, Inc.,** : | |
| Plaintiff, : | Case No.: 3:08-cv-01928 |
| v. : | Judge David A. Katz |
| **Kantner Group, Inc.,** : | **PLAINTIFF CHICAGO SWEETENERS, INC.'S MOTION FOR ENTRY OF** |
| Defendant. : | **DEFAULT JUDGMENT** |

Plaintiff Chicago Sweeteners, Inc. ("CSI") moves this Court for entry of default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. This Motion is supported by the following Memorandum.

Respectfully submitted,

/s/ Pete Singer
William M. Mattes (0040465)
Michael J. King (0072597)
DINSMORE & SHOHL, LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Telephone: (614) 628-6880
Facsimile: (614) 628-6890
e-mail: bill.mattes@dinslaw.com
michael.king@dinslaw.com

Pete S. Singer (0076711)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
e-mail: pete.singer@dinslaw.com

Counsel for Plaintiff
Chicago Sweeteners, Inc.

## MEMORANDUM IN SUPPORT OF ENTRY OF DEFAULT JUDGMENT

### I. Introduction

Plaintiff CSI filed a breach of contract Complaint against Defendant Kantner on August 11, 2008. The Summons and Complaint were served on Defendant on September 29, 2008, by certified mail, as evidenced by the return of service on file with the Court. Accordingly, Defendant's deadline to serve an answer or motion was October 20, 2008. Because Defendant failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, the Clerk of Court entered default against Defendant on October 29, 2008. To date, CSI's counsel has not received any document or communication of any kind from Defendant, nor has any motion or answer been filed by Defendant with the Clerk of Courts. Accordingly, CSI respectfully requests that default judgment be entered against Defendant and CSI be awarded damages based on Defendant's breach of contract.

### II. Default Judgment Against Defendant Kantner is Warranted and Necessary

Under FRCP 55(b)(2), a default judgment may be entered when a party is in default under FRCP 55(a). The Clerk of Court entered default against Defendants on October 29, 2008. The default concedes the truth of the allegations of the Complaint as to Defendant Kantner's liability to Plaintiff CSI for breach of contract. *See, e.g., Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." (internal quotation marks and citation omitted)); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiffs well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on

appeal the facts thus established."). In the case at bar, the relevant well-pleaded facts of CSI's Complaint are as follows:

8. On or about October 25, 2007, Plaintiff offered to sell Defendant six loads of rennet casein 30 mesh ("Rennet"), which is used in the production of imitation cheese.

9. Under the terms of the offer, Defendant would issue for release, take delivery of, and pay for one load of Rennet per month, from January through June of 2008, at a cost of $6.02 per pound, to be shipped FOB to Defendant's facility in Chambersburg, Pennsylvania. Each load consisted of 735 bags of Rennet, each weighing 25kg, for a total cost of $1,463,193.00, plus $6.00 per pallet.

Previously, Defendant purchased 756 bags of Rennet in or around January, 2007, and 330 bags of Rennet in or around March, 2007. Defendant never complained to Plaintiff about, or otherwise expressed any dissatisfaction with, the Rennet it purchased from Plaintiff.

10. Plaintiff informed Defendant that time was of the essence due to the short time-frame Plaintiff had to secure the Rennet from its supplier.

11. On or about October 26, 2007, Defendant accepted Plaintiff's offer by instructing Plaintiff to issue purchase order number 4632 (the "PO") for the six loads of Rennet. In reliance on Defendant's acceptance, Plaintiff purchased the Rennet from its supplier.

12. On or about October 31, 2007, Plaintiff transmitted the PO to Defendant for execution. On or about November 27, 2007, Defendant returned the executed PO to Plaintiff, thus forming a contract between the parties for the sale and

3

purchase of the Rennet (the "Contract"). [A copy of the Contract is attached to the Complaint as Exhibit 1]

13. Despite the terms of the Contract, Defendant failed to issue releases for, take delivery of, or pay for any of the Rennet beginning in January, 2008. On or around March 7, 2008, Plaintiff contacted Defendant to state that Plaintiff expected Defendant to fully honor its obligations under the Contract.

14. On or around April 4, 2008, Defendant told Plaintiff that it would issue its release for one load per month from July through December. That same day, Defendant followed-up with another communication stating that it would issue a release for a load in April.

15. Despite its assurance, Defendant did not issue a release for a load in April. Subsequently, Defendant assured Plaintiff that it would take one load per month starting in May. Again, however, Defendant failed to provide any release dates for the six loads.

16. On May 21, 2008, Plaintiff contacted Defendant to state that as a result of Defendant's failure to comply with the Contract, Plaintiff was being forced to incur finance charges and warehousing costs on the inventory that Defendant wrongfully refused to purchase.

17. Defendant finally issued a release for one load of Rennet at the end of May, 2008, which Defendant accepted on or about May 30, 2008. That load was paid for in or around the first week of August, 2008.

18. Defendant, however, has neither issued any other releases for the remaining loads, nor paid for any of the remaining loads.

19. As a result, Plaintiff emailed a letter to Defendant dated July 1, 2008, through counsel, demanding that Defendant comply with the terms of the Contract. Plaintiff gave Defendant until July 9, 2008 to respond. [A copy of the July 1, 2008 letter is attached to the Complaint as Exhibit 2.] Defendant has not responded to Plaintiff's demand.

20. Plaintiff has performed all of its obligations under the Contract. Despite Plaintiff's performance, Defendant has failed to honor its obligations under the Contract, which has directly and proximately resulted in Plaintiff suffering damages.

21. Despite repeated demands that Defendant honor its obligations under the Contract, Defendant has failed to do so, and is in material breach of the Agreement.

For the reasons set forth above, CSI respectfully requests an entry of Default Judgment against Defendant as it relates to liability on the claims for relief set out in the Complaint. (A proposed Entry granting this Motion is submitted contemporaneously herein).

### III. <u>Plaintiff CSI's Damages Due to Defendant's Breach of Contract</u>

As definitively established above, Defendant is liable to CSI for Defendant's clear breach of contract. As a result of Defendant's breach, CSI is entitled to a number of damages. The amount of damages sought and the basis for the same are detailed in the attached Declaration of Timothy Krellwitz (see Exhibit A), the Sales Manager for CSI involved in this matter. In short, as a result of Defendant's breach, CSI incurred at least **$1,270,497.04** in damages. *See* Declaration of T. Krellwitz attached under Exhibit A for detailed account of these losses.

5

In addition to the above damages, CSI is also entitled to prejudgment interest. R.C. §1343.04(A); *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58 (holding that prejudgment interest accrues from the time the money should have been paid on the breached contract). According to the facts in the Complaint and the attached Declaration, CSI is owed, at a minimum, $68,736.66 in prejudgment interest as of the date of this filing. The basis for this prejudgment interest calculation is set forth in the table below.

| Amount owed | Days Amount Owed | Interest Rate[1] | Interest owed |
|---|---|---|---|
| $ 243,865.50 | 29 | 8% | $ 1,550.05 |
| $ 487,731.00 | 31 | 8% | $ 3,313.90 |
| $ 731,596.50 | 30 | 8% | $ 4,810.50 |
| $ 975,462.00 | 31 | 8% | $ 6,627.80 |
| $ 1,463,193.00 | 31 | 8% | $ 9,941.69 |
| $.1,219,327.35 | 159 | 8% | $ 42,492.72 |
| | | **Total:** | **$68,736.66** |

Accordingly, CSI respectfully requests that this Court grant it prejudgment interest based on Defendant's breach of contract in the amount of **$68,736.66**.

As the amount of damages is easily ascertainable from the Complaint and the Declaration, no evidentiary hearing is necessary. *See, e.g., HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988) ("It is settled that, if arriving at the judgment amount involves nothing more than arithmetic - the making of computations which may be figured from the record - a default judgment can be entered without a hearing of any kind."); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (entering default judgment without a hearing on damages where the amount claimed was liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits).

---

[1] At the present, all contract damages as a result of Defendant's breach were incurred in 2008. The interest rate applicable to contract damages in 2008 is 8% according to R.C. 5703.47.

Accordingly, CSI respectfully requests a default judgment against Defendant in the amount of $1,270,497.04 plus pre-judgment interest of $68,736.66 for total judgment of **$1,339,233.70.**

## IV. <u>Conclusion</u>

For the reasons set forth above, CSI respectfully requests its Motion for Default Judgment be granted and that it be awarded a judgment in the amount of $1,339,233.70 for the damages it incurred as a direct and proximate result of Defendant's breach of contract.

Respectfully submitted,

<u>/s/ Pete Singer</u>
William M. Mattes (0040465)
Michael J. King (0072597)
DINSMORE & SHOHL, LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Telephone: (614) 628-6880
Facsimile: (614) 628-6890
e-mail: bill.mattes@dinslaw.com
michael.king@dinslaw.com

Pete S. Singer (0076711)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
e-mail: pete.singer@dinslaw.com

Counsel for Plaintiff
Chicago Sweeteners, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was served electronically via the Court's ECF/CM system, and that a hard copy was served by first class U.S. mail, postage prepaid, upon any party not appearing on the electronic service list, this 8th day of December, 2008.

/s/ Pete Singer